IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| NATURE'S SUNSHINE PRODUCTS, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PAVEL KUMETS, ALLA KUMETS, SIMON KUMETS, CHARLES KUMETS, AND STRUL KUMETS, natural persons, and BRILLIANT SOLUTIONS, LLC, a Texas limited liability company,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION<br><br><br>Case No. 2:20-cv-658<br><br>Judge Tena Campbell |

Citing the Federal Arbitration Act (FAA), Defendants Pavel Kumets, Alla Kumets, Simon Kumets, Charles Kumets, Strul Kumets, and Brilliant Solutions, LLC, have filed a motion to compel arbitration of the claims that Plaintiff Nature's Sunshine Products, LLC, (NSP) asserts against them in its Amended Complaint. Defendants base their motion on arbitration provisions in several Member Agreements that they executed to become resale distributors of NSP products. (Defs.' Mot. to Stay Case and Compel Arbitration (ECF No. 32).)

For the reasons set forth below, the court finds that NSP's breach of contract and tortious interference with contract claims are subject to arbitration, but NSP's other claims—fraud, civil conspiracy, and false advertising/deceptive trade practices—are not arbitrable. Accordingly, Defendants' motion is granted in part and denied in part.

1

**FACTUAL BACKGROUND**[1]

    **I.**    **The Member Agreement**

NSP manufactures and sells natural health and wellness products, including herbal supplements. (Am. Compl. at ¶¶ 12–14 (ECF No. 27).) Individuals and business entities can apply to become NSP distributors in order to receive NSP products for resale to consumers. To become an authorized distributor, an applicant must submit an application and execute a Member Agreement with NSP, agreeing to abide by NSP's Policies and Procedures ("P&Ps") (Id. at ¶ 16.) The applicant's individual application and the P&Ps together form the Member Agreement[2] between the applicant and NSP. (Id.; Pl.'s Opp'n at 2 (ECF No. 38).)

NSP adopted new versions of the P&Ps in 2013, 2015, and 2018. Each new version of the P&Ps expressly superseded all earlier versions. (See Defs.' Mot Ex. A (the 2018 P&Ps) at 4 (ECF No. 32-1) ("These Policies and Procedures are effective February 1, 2018. Any provision or cause of dealing established under a previous version of these Policies and Procedures is no longer valid or recognized by NSP as of the above date").)

Since 2010, every version of the P&Ps has expressly prohibited distributors from selling NSP products through any Internet auction site, shopping site, or order fulfillment store: "including but not limited to, eBay®, eBay® Store, Amazon®, OverStock®.com, etc." (2018 P&Ps at 12.)

---

[1] The following facts are taken from NSP's amended complaint or from evidence submitted as exhibits to the parties' briefs. They are viewed in a light most favorable to NSP, the non-moving party. See Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014).
[2] There is some discrepancy about whether the title of this agreement is "Member Agreement" or "Membership Agreement." The court assumes, like the parties, that the terms "Member Agreement" and "Membership Agreement" can be used interchangeably. (Defs.' Mot. at 3 n.4)

Every version of the P&Ps also contains a "Beneficial Interest" provision limiting the number of distributor accounts that one family unit may open:

> **4.10 Beneficial Interest**
> Members of the same family unit—defined as a husband, wife and children living at the same address—may not have more than one membership account in total. The Member Agreement is void if any member of the family unit has previously signed up as a Member, and that original account is still active.

(Id. at 4.)

In February 2018, NSP amended the P&Ps to include an arbitration provision, which reads:

> **15.4 Arbitration/Governing Law**
> Any legal cause of action arising out of or relating to the Membership Agreement, or the breach thereof, will be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(Id. at 16.)

## II.     Defendants' Member Agreements

Pavel and Alla Kumets are married and their sons are Simon and Charles Kumets. Pavel, Alla, Simon, and Charles live at the same address: 6048 Ronchamps Drive in Round Rock, Texas. Strul Kumets is Pavel's father and he lives at another address in Round Rock: 8508 Chat Lane. Pavel is the sole owner and member of Brilliant Solutions, LLC, which is registered as a limited liability company in Texas. (Am. Compl. at ¶¶ 4–7.)

On August 13, 2010, Alla became a NSP distributor after submitting an application and executing a Member Agreement. The address associated with her account was, and still is, 6048 Ronchamps Drive. (Ampuero Decl. at ¶ 8 (ECF No. 40).)

On March 19, 2013, Simon applied, executed a Member agreement, and became a NSP distributor under the trade name "E Authorize Group." (Id. at ¶ 9.) On June 29, 2013, Michael Kumets—not a Defendant in this case—also applied, executed a Member Agreement, and became a NSP distributor. He later added Charles to his account on May 9, 2018.

On July 28, 2013, Strul submitted an application, executed a Member Agreement, and became a NSP distributor under the trade name "Brilliant Solutions." On October 27, 2015, Pavel was added to Strul's account. (Id.) NSP says that at the time it processed these applications, it did not know that Defendants were part of the same family.

In 2018, NSP learned that Defendants were selling NSP products through unauthorized online storefronts. For example, Defendants operated the Amazon storefronts "Herb Remedies," "Vita Depot," "Vitaherbs," and "Vital Solutions;" the eBay storefronts "Solle Vitamins," "dananddave," and "theherbsstore;" and the websites www.sollevitamins.com and www.naturalherbs123.com. (Id. at ¶ 11.) Moreover, NSP claims that Defendants used the name "Vital Solutions" to intentionally confuse consumers, as this name is associated with a well-known NSP sales manager who operates a website with a similar name. (Am. Compl. at ¶ 34.)

Defendants also used fake names to enter into additional Member Agreements with NSP. Someone using the name "Javier Alemanda" submitted an application on October 31, 2015. Later, NSP discovered that Javier Alemanda is a fictitious name registered in Texas by Brilliant Solutions and associated with the address 6048 Ronchamps Drive. (Ampuero Decl. at ¶ 14; Pl.'s Opp'n at 8.) On October 31, 2016, "Sacred Herbs" submitted a distributor application; no personal name was provided in the application, but NSP later learned that Sacred Herbs is another fictitious business name registered in Texas by Pavel. (Ampuero Decl. at ¶ 15; Pl.'s Opp'n at 9.)

After discovering Defendants' unauthorized sales methods, NSP terminated the memberships of Alla, Pavel, Simon, Charles, and Strul on October 9, 2018. Defendants continued to submit distributor applications through third parties and under fake names. On October 11, 2018—two days after Defendants' accounts were closed by NSP—NSP received a distributor application from "Earth Treasures." (Ampuero Decl. at ¶ 16.) NSP found out that Earth Treasures is a business name registered in Texas by Brilliant Solutions and associated with the 6048 Ronchamps Drive address. (Pl.'s Opp'n at 7.)

Moreover, on October 19, 2018, an individual named Jack Honig set up a distributor account with connections to a return shipping address used by Defendants. Mr. Honig also sponsored a distributor application from "Felix But," who became a distributor on October 21, 2018. (Ampuero Decl. at ¶¶ 19–20.) The address associated with Mr. But's account is 8508 Chat Lane in Round Rock, Texas, which is the same as Strul's address.

NSP ultimately terminated all of the accounts with connections to Defendants in February of 2019.

## LEGAL STANDARD

While the Tenth Circuit has not precisely addressed the standard of review a district court should apply when ruling on a motion to compel arbitration, it has suggested that a summary judgment standard applies when the parties "dispute the making of an agreement to arbitrate." Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475 (10th Cir. 2006).

District courts within the Tenth Circuit have routinely applied this standard of review when ruling on motions to compel arbitration. See, e.g., Leslie v. Heath, No. 2:15-CV-00833-PMW, 2016 WL 3033715, at *2 (D. Utah May 26, 2016); Axis Venture Grp., LLC v. 1111 Tower, LLC, 2010 WL 1278306, at *3 (D. Colo. May 30, 2010); Quazilbash v. Wells Fargo &

Co., 2010 WL 1643778, at *1 (N.D. Okla. Apr. 22, 2010). And in other circuits, many courts have found that a standard analogous to the summary judgment standard should govern motions seeking to enforce arbitration agreements under the FAA. See In re Universal Serv. Fund Tel. Billing Practices Litig., 300 F. Supp. 2d 1107, 1116 (D. Kan. 2003) (collecting cases from the Second, Third, and Seventh Circuits).

Although the Supreme Court has long recognized and enforced a "liberal federal policy favoring arbitration agreements," Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002), this presumption does not apply when the court is evaluating whether there is a valid and enforceable arbitration agreement in the first place. Encore Productions, Inc. v. Promise Keepers, 53 F.Supp.2d 1101, 1108 (D.Colo.1999) (citing Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir.1998)).

When the parties dispute the existence of a valid arbitration agreement, the party moving to compel arbitration must present "evidence sufficient to demonstrate the existence of an enforceable agreement." Bellman v. i3Carbon, LLC, 563 F. App'x 608, 612 (10th Cir. 2014). If the moving party does so, the burden shifts to the nonmoving party "to raise a genuine dispute of material fact regarding the existence of an agreement." Id.

## ANALYSIS

NSP raises five cause of action against Defendants: breach of contract, fraud, civil conspiracy, tortious interference with contract, and false advertising/deceptive trade practices. Defendants move for arbitration on all five claims.

NSP argues that most of the conduct giving rise to its claims is not connected to any enforceable contract containing an arbitration agreement. First, NSP says that its fraud, civil conspiracy, and tortious inference claims are not subject to arbitration because they are related to

Member Agreements that are void and unenforceable. Second, NSP maintains that its breach of contract claim is not arbitrable because the conduct underlying the claim occurred before the adoption of the arbitration provision in 2018. Finally, NSP contends that its remaining claim for false advertising/deceptive trade practices does not cover conduct within the scope of the arbitration provision.

As explained below, the court agrees with NSP that all but one of the Member Agreements are void and unenforceable. The Member Agreement executed by Alla on August 13, 2010, (the "2010 Member Agreement") is the sole valid agreement. Because NSP's fraud, civil conspiracy, and false advertising/deceptive trade practices claims stem from conduct unrelated to the 2010 Member Agreement, arbitration cannot be compelled on those claims. On the other hand, NSP's breach of contract and tortious interference claims do arise from the 2010 Member Agreement, which contains an enforceable and retroactive arbitration provision. Those claims must be arbitrated.

## I. The FAA's Legal Framework

The FAA applies to written arbitration agreements "involving commerce." 9 U.S.C. § 2. That phrase is "coextensive with congressional power to regulate under the Commerce Clause." Comanche Indian Tribe of Okla. v. 49, LLC, 391 F.3d 1192, 1132 (10th Cir. 2004) (quoting Foster v. C.F. Turley, Jr., 808 F.2d 38, 40 (10th Cir. 1986)). The parties do not dispute that their transactions affected interstate commerce.

The court must first determine whether a valid agreement to arbitrate exists. "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997). To do that, the court looks to "state law principles of contract formation to tell [it] whether an

7

agreement to arbitrate has been reached." Id.; see also Hardin, 465 F.3d at 475 ("Generally, courts 'should apply ordinary state-law principles that govern the formation of contracts' to determine whether a party has agreed to arbitrate a dispute.") (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The party resisting arbitration may raise "generally applicable contract defenses, such as fraud, duress, or unconscionability," to invalidate the arbitration agreement. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

If the court decides that the agreement is valid, it must then determine whether the dispute falls within the scope of that agreement. Nat'l Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

## II. Only the 2010 Member Agreement Contains an Enforceable Arbitration Provision.

No arbitration may be compelled in the absence of an express, unequivocal agreement to arbitrate. Weis Builders, Inc. v. Kay S. Brown Living Tr., 236 F. Supp. 2d 1197, 1204 (D. Colo. 2002), aff'd, 94 F. App'x 687 (10th Cir. 2004). And a valid agreement to arbitrate cannot arise out of a broader contract if no broader contract ever existed. Id.

NSP says that arbitration cannot be compelled because the arbitration provisions at issue arise from void and unenforceable Member Agreements. In support of this position, NSP makes two principal arguments. First, NSP argues that several of the Member Agreements entered into by Defendants from the same family unit are void according to the express terms of the P&Ps. Second, NSP argues that numerous Member Agreements are void for fraud in the execution.

8

As made clear by the P&Ps' "Beneficial Interest" provision, a Member Agreement is void if any member of the same family unit had previously executed a separate Member Agreement. (2018 P&Ps at 4.) The P&Ps define "family unit" as a husband, wife and children living at the same address. (Id.) Alla, Pavel, Simon, and Charles—who all live at 6048 Ronchamps Drive—make up one family unit.

Consequently, after Alla executed the 2010 Member Agreement, every subsequent agreement entered into by Pavel, Simon, and Charles was void. This includes the Member Agreement executed on March 19, 2013, by Simon under the trade name "E Authorize Group," the Member Agreement to which Pavel was added on October 17, 2015, and the Member Agreement to which Charles was added on May 9, 2018. Because these three Member Agreements are void based on the P&P's one-agreement-per-family rule, their arbitration provisions are not enforceable.

The court also agrees with NSP's assertion that several Member Agreements are void for fraud in the execution. Fraud in the execution of a contract occurs if a "misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract." Restatement (Second) of Contracts § 163 (1981). The identity of the parties to a contract is a material and essential term of the contract. Miller v. Celebration Mining Co., 29 P.3d 1231, 123 (Utah 2001). If the elements of the defense of fraud in the execution are met, the contract is void ab initio—null from the beginning. Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 110 (3d Cir. 2000); Weis Builders, 236 F. Supp. 2d at 1204.

Defendants entered into several Member Agreements under fictitious names that misrepresented and shrouded their identities. NSP could not assent to the contracts executed by "Javier Alemanda" on October 13, 2015, "Sacred Herbs" on October 13, 2016, "Earth Treasures" on October 11, 2018, or "Felix But" on October 21, 2018. As a result, arbitration cannot be compelled based on these void Member Agreements.

In contrast, the 2010 Member Agreement executed by Alla is not void. At oral argument, NSP admitted that this particular agreement—the very first contract executed by the parties—is valid. There are no facts suggesting that the 2010 Member Agreement is unenforceable.

Moreover, the arbitration provision at issue applies retroactively to conduct that occurred before its adoption into the Member Agreement in 2018. Court have generally found that broad arbitration provisions apply retroactively to disputes that predate the execution of the arbitration agreement. See In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig., 835 F.3d 1195, 1202 (10th Cir. 2016); Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 331–32 (10th Cir. 1993); see also Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc., 567 F.3d 1191, 1196 (10th Cir. 2009) (explaining how to determine whether an arbitration clause is broad or narrow in scope). In Zink, the Tenth Circuit found that an arbitration provision covering "any controversy between us arising out of your business or this agreement" was "clearly broad enough" to cover a dispute that arose before the arbitration agreement was executed. 13 F.2d at 331–32.

Here, the arbitration clause applies to "[a]ny legal cause of action arising from or relating to the Member Agreement or breach thereof." (2018 P&Ps at 16.) Like the language of the arbitration clause in Zink, this is broad language that evinces the parties' intent to cover all

claims related to the Member Agreement, whether or not the conduct giving rise to those claims occurred before the arbitration provision's adoption in 2018.

In short, the only enforceable arbitration provision is the one connected to the 2010 Member Agreement. All of the other Member Agreements are void, precluding the existence of enforceable arbitration provisions within them.

### III. The Scope of the Arbitration Provision Covers the Breach of Contract and Tortious Interference Claims.

Having established that only one enforceable arbitration agreement exists, the next question is whether NSP's claims fall under its scope. Although "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone Mem'l Hosp. 460 U.S. at 24, an arbitration clause "does not extend to all disputes of any sort . . . but only to disputes touching specified provisions of the agreement." Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1516 (10th Cir. 1995).

NSP's breach of contract claim is certainly within the scope of the arbitration provision. As noted, the Member Agreement's arbitration provision is broad, covering legal claims "arising out of or relating to" the Membership Agreement. (2018 P&Ps at 16). The breach of contract claim arises directly from the parties' 2010 Member Agreement: NSP alleges that Alla materially breached the agreement by selling NSP products on unauthorized online stores. (Am. Compl. ¶ 75.)

Similarly, NSP's tortious interference with contract claim, though based in tort, is dependent on the existence of a valid and enforceable contract. NSP alleges that Defendants intentionally and wrongfully induced breaches or disruptions of all valid and enforceable Member Agreements. (See Am. Compl. at ¶¶ 98–101.) Because this claim arises from

11

Defendants' contractual relationship with NSP, it within the scope of the 2010 Member Agreement's arbitration provision.

In contrast, NSP's other claims for fraud, civil conspiracy, and false advertising/deceptive trade practices arise from conduct that is not closely related to the 2010 Member Agreement. NSP's fraud claim arises out of Defendants' misleading and deceptive methods of gaining access to NSP products for resale. Defendants obtained NSP products by using fake names and without disclosing their familial relationship to Alla. This conduct is not related to the 2010 Member Agreement and falls outside the scope of the arbitration provision.

Similarly, NSP's civil conspiracy claim is not arbitrable. This claim arises from Defendants' common scheme with each other and with third parties to submit product orders for accounts registered under fake names and accounts not disclosed as being among the Defendants' family unit.

Finally, NSP false advertising/deceptive trade practices claim is unrelated to the 2010 Member Agreement because it is based on Defendants' use of the name "Vital Solutions" to mislead consumers. The court agrees with NSP that this claim stems from Defendants alleged misappropriation of the name "Vital Solutions" that was also used by a reputable NSP sales manager. (See Am. Compl. ¶ 34.) This conduct stands apart from the Defendants' contractual duty to NSP and is not subject to arbitration.

## CONCLUSION

The court compels arbitration on NSP's breach of contract claim and tortious interference with contract claims because these claims relate to the arbitrable 2010 Member Agreement. NSP's remaining claims for fraud, civil conspiracy, and false advertising/deceptive practices are not subject to arbitration and can proceed in this court.

Accordingly, Defendants' Motion to Compel Arbitration (ECF No. 32) is GRANTED IN PART and DENIED IN PART. Defendants' Motion for a stay is DENIED, and this action can proceed in this court simultaneously with arbitration.

DATED this 7th day of April, 2021.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge